Fall 1809,
First District.

Woolsey
*vs.*
Cenas.

against a demand on him in his own right.    6 *Term Rep.* 582, *Tidd* 560.

*Grymes*, in reply.    All the authorities cited, go merely to prove the general principle of the joint and several liability of partners, and whenever the books speak of their several liability, the position is predicated, on the ground that the partnership fund is exhausted.

*The Court,* Lewis, *J. alone* gave
JUDGMENT FOR THE PLAINTIFF.

—◦◯◦—

*W. W. WOOLSEY* vs. *CENAS.*

The bill of lading does not vest the property in the consignee.

GEORGE M. WOOLSEY, being in this city of New-Orleans, shipped on board of the brig Troy, a number of kegs, containing forty thousand dollars in silver, marked W. W. W. which he consigned to the plaintiff, and drew bills on him for the whole amount.    The bills of lading expressed that the money was shipped as the property of the consignor.    While the brig was floating down the Mississippi, a writ of attachment against the property of George M. Woolsey was put into the hands of the defendant (the sheriff of the district) who having overtaken the brig at the Balize, seized upon and brought the money to the city; whereupon the plaintiff brought his action for the recovery of the money.

IT was in evidence that the bills drawn by

George M. Woolsey had been presented to, ac-
cepted and paid by the plaintiff, and there was
attached to the petition an affidavit made before a
notary public, in the city of New-York, to prove
the property of the plaintiff in the money. The
jury found a verdict for the defendant, and the
plaintiff moved for a new trial.

*Brown* and *Alexander* for the plaintiff. The
verdict is contrary to law: From the moment
that the bills of lading were signed by the cap-
tain, the property was divested out of George M.
Woolsey and vested in the plaintiff, and it was
no longer in the power of the consignor to des_
troy the right of the consignee ; unless the for-
mer had arrested the money *in transitû* in case
the latter had failed, *Abbot* 232, and if property
be consigned to meet an acceptance, it cannot be
stopped *in transitû*, *Abbot* 238, for the right of
stopping *in transitû* belongs only to the consignor
and he can exert it only in case of the failure of
the consignee. As to third persons, the delivery
of the bill of lading is a deliverey of the proper-
ty. 2 *Term Reports*, 7, 1 *Johnston, Ludlow,* vs.
———. The bill of lading is the title by which
the property is to be determined. 12 *Mo.* 156.
Had this property been consigned to the person
in whose favour the bills were drawn, there could
not have been a doubt on the question, because it
would have been a consignment to discharge a debt,
and the property would have vested immediately
on the receipt of the dollars by the captain. It

FALL 1809,
First District.

WOOLSEY
*vs.*
CENAS.

is difficult to discover a great difference in the present case. The shipment was made for the purpose of satisfying a creditor.

*Duncan* and *Robertson* for the defendant. There cannot be a doubt that the money was shipped as the property of George M. Woolsey. It was at his risque and he must have borne the loss, if the brig had sunk before the attachment was levied. Neither the plaintiff, nor the person in whose favour the bills were drawn, had any interest or would have been affected by the loss of the vessel.

THE case might have been altered, if the bill of lading had reached the plaintiff's hands, and he had accepted the bill in consequence of it, but before the arrival of the bill of lading and acceptance of the bill of exchange, the property was at least in abeyance and at the risque of the consignor. The consignee was not bound to do honour to the bill, nor to accept the consignment.

IT is said the consignor can only stop the goods *in transitû*, in case of the failure of the consignee. Is he not at liberty to stop them, if the bill of lading be not negociable, or while it remains unassigned, and can he not compel the captain to deliver them back as long as no assignment of the bill of lading has taken place?

*Brown*, in reply. The general principle that the delivery of goods to the master of a ship, and his signing the bill of lading for them, vest

the property in the consignee, cannot be questioned. The master then becomes his agent, and a delivery to him is a delivery to the consignee. If this position be correct, it follows, that as George M. Woolsey could not have stopped the goods, neither his creditors, nor the sheriff, can exercise any act of ownership which he might not have exercised. He had totally divested himself of his rights to the property, except that of stopping it in case of the failure of the consignee. W. W. Woolsey's title was defeasible upon the happening of this contingency alone. It is the bill of lading that stamps the title on the property. It is the mercantile instrument which designates the ownership. 12 *Mo.* 156. No matter what the consideration may have been; like that of a bill of exchange, it cannot be inquired into. This is for the ease and facility of commerce.

BUT it is said that the solution of the question, at whose risk was the money at the time the attachment was levied, will afford the proper criterion to determine who was the right owner; and that the money was at the consignor's risque. This general rule has its exception, introduced for the convenience and safety of merchants. When goods are insured, the insurer runs the risque, without the property being in him. So in consignments, the consignor runs the risque, and is as the insurer. If this be not the case, how is the principle to be reconciled, that a delivery

FALL 1809,
First District.

WOOLSEY
*vs.*
CENAS.

to the master is a constructive delivery to the consignee, and that delivery vests the property?

Again, it is said that the money when attached was the property of George M. Woolsey, and W. W. Woolsey had yet acquired no right. But as soon as the latter received the bill of lading and accepted the bill of exchange, without notice of the attachment, his right, if it were only inchoate before, became complete.

BILLS of lading, like bills of exchange, are transferable by endorsement, and the *bona fide* holder is the only person who can demand the contents, and in whom the property vests. If A. draw in favour of B. on C. who accepts, and D. a creditor of B. attaches in the hands of C. and the bill afterwards be endorsed to E. who had no notice of the attachment, E. will recover notwithstanding it. This is our case: the consignee's right cannot be affected by the attachment.

*By the Court*, LEWIS, *J. alone.* It is not considered as material in this case to determine whether property can be stopped *in transitû.* In order to support this action, all the plaintiff has to do, is to shew that the money was his, at the time the attachment was levied on it. Were it material, I would incline to the opinion that under our statute, the property of an absconding debtor is liable to be attached wherever it may be found within this territory.

WHETHER the money was the property of George M. Woolsey, was a question for the de-

termination of the jury on the evidence before them, and in bringing a verdict in favour of the defendant, they have determined it in the affirmative.

As to the point of law which arises as to the effect of the transfer, it seems to me the property did not vest in W. W. Woolsey, as there was no antecedent debt existing, no consideration paid and no privity in the transaction between him and the consignor, to whose proposition he was not bound to accede, and at whose risque the money remained. A consignor cannot vest a right in the consignee unless the will of the latter concur in the acquisition of it. The contract by which the right of property passes from the one to the other is only inchoate, until it receives the assent of both: while it is the act of one party only, the other is under no obligation and acquires no right. The promise is what civilians call a pollicitation, which is not binding till, by the assent of both parties, it ripens into a contract. *Pollicitatio est solius accipientis promissum.* 1. *Pothier on Obligations,* 5, *no.* 4.

It seems absurd to say that a person can be the rightful and exclusive owner of property and yet sustain no loss by the destruction of it, and this would be the case if the right of property was considered in the consignee, while the goods are at the risque of the consignor.

MOTION OVERRULED.