10   351|
112  714|

CAMMACK, SQUIRES & WEST *v.* GENTRY FLOYD—SOUTHERN BANK OF KEN-
TUCKY, Intervenors—TURNER, WILSON & CO., Garnishees.

An attaching creditor can have no higher or better right to the property attached than his debtor,
and, where *Floyd*, the drawer of a bill of exchange, executed a mortgage and pledge of property
in Kentucky, in favor of and to secure his accommodation endorsers to the bill, and there delivered
possession of the property to them, by whom it was shipped to New Orleans, with instructions to
the consignees to realize from the sale the amount of the bill and appropriate the sum to its pay-
ment; and the amount was realized by the sale, and with the consent of *Floyd*, information was
given by the consignees of their intention to appropriate a sufficient amount of the proceeds
of the sale to pay the bill, as instructed, and the Bank of Kentucky having discounted the bill, was
held to be entitled to be paid in preference to an attaching creditor of *Floyd*.

APPEAL from the Fourth District Court of New Orleans. *Reynolds*, J.
*R. & H. Marr*, and *A. A. Stith*, for plaintiffs and appellants. *W. H.
Paxton*, for the garnishees. *Moïse & W. M. Randolph*, for interventors.

SLIDELL, C. J. The fund in dispute is a sum of $1300, in the hands of the gar-
nishees, *Turner, Wilson & Co.* The plaintiffs, creditors of *Floyd*, claim it under
an attachment and process of garnishment levied in March, 1853. The interven-
ors claim it as holders of a bill of exchange accepted by *Floyd*, for the payment
of which, they say the fund had received a destination placing it beyond *Floyd's*
control before the attachment. The fund was awarded to the intervenors by the
court below, and the attaching creditor has appealed.

A brief statement of the circumstances under which the garnishees hold the
fund, will show the unquestionable correctness of the decree below.

In the fall of 1852, *Floyd* obtained in Kentucky a loan from the Southern
Bank of Kentucky, upon his acceptance of a bill endorsed for his accommodation
by his friends *Arnold* and *Jones;* and to protect *Jones* for his endorsement exe-
cuted there a mortgage in his favor upon certain property, among which were cer-
tain flat-boats and their cargoes of staves. The staves were intended for the
New Orleans market, and bills of lading were signed in the name of *Jones*, as
shipper, and *Turner, Wilson & Co.*, as consignees, which were delivered to
*Jones*, who transmitted them through his agent *Alexander*, to *Turner, Wilson &
Co.*, with instructions to realize from their sale the sum of $2500, appropriate it
to the payment of the bill of exchange, and pay the balance, if any, to *Floyd.*
*Arnold*, the co-endorser with *Jones*, and similarly interested in the application of
the shipment, came to New Orleans with the flat-boats. Upon their arrival in
January, *Turner, Wilson & Co.*, took possession under their bills of lading,
through *Arnold*, whom they entrusted with the staves. They seem to have
authorized *Floyd*, who had a residuary interest after the payment of the bill, to
look for a purchaser. He made a contract of sale with one *Fonbene*, who was
immediately notified in writing by *Turner, Wilson & Co*, that $2500 of the price
must be paid to them, beyond which, and the expense of watching the boats, they
would make no claim. *Fonbene* accordingly paid the consignees $2500, which
they, with the approval of *Arnold*, the agent of *Jones*, and the assent of *Floyd,*
received upon the promise made to *Arnold*, and communicated on the same day
by letter to *Alexander*, that they would hold, and appropriate it to the payment of
the bill of exchange, then deposited for collection by the intervenors in a bank at
New Orleans. All this took place before the plaintiffs took out their attachment;

CAMMACK
v.
FLOYD.

and is clearly shown by the answer of the garnishees: and their witness. *Jones* has never revoked his instructions, and the bill of exchange which was protested at maturity, is unpaid in the hands of the intervenors.    The garnishees desired to pay its amount, but were arrested by the process of garnishment, and paid the the bank at maturity only $1100 on account, being the surplus over the attaching creditor's claim.

The intervenors were unquestionably entitled to receive the fund.    The property from which the fund arose, passed out of the possession and control of *Floyd* under contracts lawful in Kentucky, and conferring upon *Jones* a possession which our law also would respect and maintain.    When the property arrived here, the intentions of the parties were carried out by the conversion of the goods into money, and the retention by the consignees of a sufficient portion of the price for the express purpose of meeting the bills, this being done by the orders of the shipper in whom the legal title was vested and with the assent of *Floyd,* who had only an equitable residuary interest in the goods.    The proposition that this arrangement could be set at naught without the consent of *Jones* is idle.    But *Jones* has never consented; his purpose that the fund should be appropriated for his protection to the payment of the bill, must in the absence of evidence, to the contrary, be considered unchanged; and the bank, the holder of the bill, signifies by its intervention, its desire to receive the fund thus appropriated for its payment by *Jones.*    *Floyd* would not be listened to, if he opposed the appropriations to the unpaid bill, for he had lost control of the fund, and the attaching creditor who claims through him by process levied after the control had lawfully passed from him, has no better right to defeat its destination.    See *Hill* v. *Simpson,* 8 An. 48 ; *Oliver* v. *Lake,* 3 An. 82 ; *Armour* v. *Cockburn,* 4 N. S., 669.

Judgment affirmed, costs of appeal to be paid by appellants.