Dibble vs. Leppert.

## No. 11,658.

### RUTH AND HENRY DIBBLE VS. W. J. LEPPERT.

A sale of property under Act 82 of 1884 can not be invalidated because of the fact that a part of the taxes for which it was sold were incorrectly assessed, another portion of said taxes having been regularly and legally assessed.

Title to the property standing in the name of H. C. Dibble, as tutor for certain minors, not mentioning their names, furnishes a proper basis for an assessment of the property in the name of H. C. Dibble, tutor.

Notwithstanding the word "tutor" is omitted from some of the assessments, it can not be doubted that the assessing officer had recourse to that title, and examined it preparatory to making same; and that same was taken, in good faith, as the basis of said assessments as made.

APPEAL from the Civil District Court for the Parish of Orleans. Theard, J.

Frank L. Richardson and Kernan & Wall, for Plaintiff, Appellant, cite 38 An. 802; 45 An. 1370; 46 An. 174; 148 U. S. 182.

Dinkelspiel & Hart, for Leon Fellman, actual Defendant, Appellee, cite 46 An. 529; 43 An. 789; 40 An. 143; 41 An. 766; 37 An. 356, 417; 27 An. 398; 26 An. 586.

Argued and submitted February 13, 1895.
Opinion handed down March 11, 1895.
Rehearing refused May 6, 1895.

The opinion of the court was delivered by

WATKINS, J. Ruth Dibble, a major, and Henry C. Dibble, a minor represented by his father as natural tutor, as the sole surviving issue of the marriage of their father with Sarah M. Dibble, née Chappell, deceased, allege themselves to be the joint owners of a certain lot of ground with the buildings and improvements thereon, "designated as the half nearest to Bacchus, or Baronne street, or original lot No. 6 of square No. 95 of Faubourg Laccouse, measuring thirty (30) feet, French measure, on Erato street, by one hundred and twenty (120) feet, F. M., in depth, but now known as lot No. 11 of square No. 252, comprised within Baronne, Dryades, Erato and Thalia streets," by inheritance from their maternal grand-

mother, she having purchased same during her widowhood from Edward Tomatis, by notarial act passed before E. Bouny, notary, on the 23d of January, 1861, and duly of record in the book of conveyances for the parish of Orleans.

As owners, they allege themselves to be entitled to the possession and enjoyment of said property, but the defendant occupies the same and refuses to surrender it, notwithstanding due amicable demand and placing him in default—alleging that he holds and possesses said premises for Leon Fellman, his lessor, residing in the city of New Orleans.

Petitioners then allege that, if it should appear that said lessor claims to own said property by virtue of an act of sale from the State of Louisiana, through James D. Houston, State tax collector, " said sale is null and void for want of due notice to petitioners; " and, if he shall claim that said sale was made in pursuance of Act 82 of 1884, " the said sale is null and void, in so far as it authorizes the sale of petitioners' property without notice, and violates Article 210 of the Constitution of the State, and the fifth amendment of the Constitution of the United States, for this, that this act authorizes sales for taxes without due process of law." They further allege " that said pretended sale is null and void for want of assessment against said property and against petitioners. That no taxes have been legally assessed against said property, but should any be found due and owing, petitioners are willing to pay whatever may be found due."

Their prayer is that they be recognized and decreed owners of said property and entitled to possession thereof, and that the defendant be condemned to pay them rent therefor at the rate of fifty ($50) dollars per month. And in the alternative that if the defendant or his lessor, Leon Fellman, should set up any rights under said tax sale, their further prayer is that such tax sale be annulled and revoked for the causes in their petition assigned.

W. J. Leppert was first cited, and thereafter Leon Fellman, who appeared by way of an alleged exception, though in reality an answer, in which he averred:

1. That he is the owner of the property claimed, which he acquired at tax collector's sale made on the 29th of April, 1885, in the forced collection of " taxes due on said property for years prior to 1879," under and in pursuance of Act 82 of 1884.

2. That Henry C. Dibble has no right or capacity to represent his minor son, "for the reason that if he ever qualified as his natural tutor in the courts of this State, having departed from this State and no longer residing here, and not having resided here for many years, he has forfeited the tutorship."

3. That plaintiffs' petition discloses no cause of action.

4. That, as a condition precedent "to the prosecution of this suit, a tender of the amount paid, with twenty (20) per cent. added, and interest, by respondent for the purchase of said property at tax sale should have been made, which was not done."

Wherefore they pray that this suit be dismissed at plaintiffs' cost.

On trial these exceptions were referred to the merits, and the defendant, Fellman, answered and set up title in himself as owner under and by virtue of the aforesaid tax sale, and the notarial conveyance to him subsequent in date and duly recorded, alleging his possession and occupancy thereunder ever since, and basing the plea of three years' prescription thereon.

He then affirms "that all the formalities of law were complied with leading up to said sale and notarial act; and that the said act, under its terms and by virtue of the law, is *conclusive* evidence of the recitals therein contained, in so far as the assessment of the property, and the fact that the taxes were not paid, are concerned."

He alleged that the amount of the price of adjudication of said property to him was four hundred dollars—an amount sufficient to discharge all the State taxes which were due thereon prior to the 31st of December, 1889, for which it was sold.

He further avers "that, in accordance with law and with the assumption contained in said act, he paid the State and city taxes from the year 1880 to 1885, both inclusive, which were due at the time of said sale and were not covered thereby"—making the total sum he expended in purchase price and taxes equal to one thousand two hundred and ninty-six dollars and twenty-eight cents, in capital alone.

He avers that since said sale he has kept all the taxes paid up, has regularly insured the property, and has placed thereon valuable and permanent improvements amounting to the further sum of three thousand three hundred and forty dollars and twenty-five cents.

On the trial there was judgment in favor of Leon Fellman, substituted defendant, affirming the validity of the sale and adjudication

to him, of the property in question, under Act 82, of 1884; and the plaintiffs have appealed.

The insistence of Fellman is, that the judgment should be affirmed; but that, if for any cause it should be reversed, the decree of this court should condemn the plaintiffs to reimburse him the sum of four thousand six hundred and thirty-six dollars and fifty-three cents, the amount of his expenditures.

Attending to the pleas filed *in limine*, first, our opinion is, that, the father having been duly appointed, qualified and confirmed as natural tutor for his minor children while they—father and children —resided in this State, in conformity to our law, his subsequent removal with his children to California, did not divest him of his trust, as in such case the father does not become expatriated *quoad hoc;* second, a cause of action is clearly and distinctly stated; third, the Constitution does not require a previous tender of the price paid at tax sale, as a condition precedent to the institution of action to annul a tax sale; as it provides only that " no sale of property for taxes shall be *annulled* for any informality in the proceedings, until the price paid, with ten per cent. interest, be tendered the purchaser." Const., Art. 210; Breaux vs. Negrotto, 43 An. 426.

If, indeed, that provision applies to this kind of sale.

On the other hand, we are of opinion that the prescription of three years, under act of 1874, is not applicable to a case like this, where one of the badges of nullity propounded by the plaintiff is that of an illegal assessment. Augusti vs. Lawless, 45 An. 1370; Edwards vs. Fairex, 47 An. 170; Borrow vs. Wilson, 39 An. 403.

On the main issue, we have the following points to consider, viz:

1. That the *sale* was null for the want of due notice to petitioners, as required by Art. 210 of the Constitution.

2. That it was violative of the fifth amendment to the Constitution of the United States, because it was made without due process of law.

3. That it was " void *for want of assessment* of said property and against petitioners."

## I.

The first of these propositions we examined and held to be untenable, in Henderson vs. Ellerman, 47 An. p. 309, and in so doing we rested our conclusions on the authority of In the matter of Orloff

Lake, 40 An. 142, and *In re* Douglass, 41 An. 765, and Martin vs. Langenstein, 43 An. 791.

From those cases it will appear that *notice of sale* falls within the fifth paragraph of the section of the statute of 1884, which enumerates the non-essential requisites of a tax sale, of the performance of which the tax deed is declared to furnish conclusive evidence, viz. :

" 5. That all of the prerequisites of the law were complied with by all of the officers, from the assessment up to and including the execution and registry of the deed to said purchaser," etc.

The provisions of the act that appertain to the sale are the following, viz. :

" That it shall be the duty of each tax collector   *   *   *   to *immediately advertise for sale*, at public auction, all property which has been heretofore, or which may hereafter be bid in for the State, under the provisions of existing laws, and all property on which there remains unpaid taxes due the State prior to December 31, 1879," etc.   Sec. 1 of Act 82 of 1884.

No previous notice of any kind is contemplated or required by the terms of that act, except that which is furnished by the advertisement of the sale.   In the Henderson case we stated the reason and authority for holding that such notice was legal, and we need not repeat them here.

We also cited and reviewed the decisions of the Supreme Court on the subject, and showed that they were in exact accord therewith.

We also quoted Martin vs. Langenstein, 43 An. 791, to show that the case of Breaux vs. Negrotto, 43 An. 426, did not apply—it being a case which involved a sale made under Act 77 of 1880, in the colection of taxes of 1880 and 1881.

Act 82 of 1884 is predicated on the constitutional ordinance for the relief of delinquent tax-payers, and not under the body of the Constitution itself; consequently, Art. 210 has no applicability to the sale under consideration.

## II.

The second of these propositions was made a question expressly in the Lake case, and same was decided adversely to the plaintiff's present contention.   In that case the point was made that Act 82 of 1884 is unconstitutional on the following grounds, viz.:   *   *   *
" because it provides for the divestiture of title to property without due process of law;" and in response thereto the opinion declares:

" That such proceedings as those provided by this act constitute ' due process of law,' in the sense of the Constitution, has been so often decided that it may be classed as an elementary principle in matters of taxation." *In re* Lake, 40 An. 148.

### III.

The third proposition is that the sale of the property was void because it was not assessed against the petitioners," that is to say, as their property by inheritance from their mother, Mrs. Sarah M. Chappell, wife of Dibble.

The fact is and the record shows that the grandmother of petitioners, Mrs. Louis W. Chappell, purchased the property from Edward Tomatis in 1861, during her widowhood, and prior to the marriage of her daughter with Henry C. Dibble, the father of the plaintiffs. It also appears that Mrs. Sarah Chappell, wife of Dibble, conveyed same to C. F. Berens on June 15, 1872, and that it stood in his name on the conveyance records until the 14th of April, 1873, when the title was retroceded to H. C. Dibble, tutor, without mention being made of the names of the minors for whom he was tutor other than the issue of his marriage with " the late Sarah Marshall Chappell."

From a certified extract from the assessment rolls it appears that the property was assessed on the roll of 1876 in the name of " H. C. Dibble, tutor."

In 1877 and 1878 in the name of H. C. Dibble.

The tax deed shows that the taxes for which the property was sold were of the years 1873, 1875, 1877 and 1878, aggregating one hundred and twenty dollars and fifty cents due the State, and for taxes of the years 1874, 1875, 1876, 1877, 1878 and 1879, aggregating two hundred and sixty dollars and fifty cents due the city of New Orleans.     That said taxes were assessed in the name of *H. C. Dibble* for the years 1873, 1874, 1875 and 1878, and in the name of H. C. Dibble, tutor, for the year 1876.     The price of adjudication to Leon Fellman was four hundred dollars, same being sufficient to discharge all the taxes against the property, State and city, prior to December 31, 1879.

The certificate of tax research shows that the property was assessed in the name of Widow Louis W. Chappell in 1871, to Charles F. Berens in 1872, to Judge H. C. Dibble, tutor, in 1873, to H. C. Dibble in 1874, to H. C. Dibble in 1875, to Henry C. Dibble, tutor, in

1876, to Henry C. Dibble, tutor, in 1877, to H. C. Dibble in 1878, 1880, 1881, 1882, 1883, 1884 and 1885.

At the tax sale made to Leon Fellman on the 29th of April, 1885, under Act 82 of 1884, in satisfaction of taxes due prior to December 31, 1879, the price of adjudication was attributed thereto, and the purchaser assumed as part of the purchase price the current taxes of the intermediate years, to-wit: those of 1880, 1881, 1882, 1883, 1884 and 1885, which he has since paid. Since the date of his purchase the property has been regularly assessed to him, and he has paid all the taxes due thereon.

The certificate of research further shows that the taxes of 1873, 1874, 1875, 1876, 1877 and 1878 were "paid by sale made under Act 82 of 1884."

A certificate from the tax collector is to the same effect.

From the foregoing it appears that the property was assessed to H. C. Dibble, tutor, for the years 1873, 1876 and 1877; and, consequently, those were good and valid assessments against the petitioners, as the title to the property stood in that name during those years.

Sec. 3 of Act 82 of 1884 provides that the tax collector's deed of sale shall be *conclusive* evidence *inter alios* "that all of the prerequisites of the law had been complied with by all the officers, from the assessment up to and including the execution and registry of the deed to said purchasers. * * * If only a portion of the taxes for which the property is sold are proved to have been paid, the sale and title to the purchaser shall, nevertheless, be good and valid, the same as if *all* the taxes for which it is sold had not been paid."

In the matter of Orloff Lake, 40 An. 142, the opposition of Leslie was *inter alios* predicated upon the following ground, viz.:

"Because the property was not assessed for any of said years 1872 to 1878 *in the name* of Mrs. H. P. Harrison, or *in the name* of the estate of Mrs. H. P. Harrison, or *in the name* of D. C. Harrison, the owner thereof during said years; but that same was *illegally assessed in the name* of John Boylan, who was never the legal owner of said property."

With regard to the foregoing ground of objection, our opinion says:

"Reference to the paragraph we have quoted from the petition of the opponent will disclose that he does not allege that *no assessment*

was made at all, but that he does allege that ' the property was not assessed *in the name* of Mrs. H. P. Harrison,' etc.; that same was '*illegally assessed in the name* of John Boylan;' and that ' it was illegally and insufficiently described on the assessment rolls,' etc. The opponent does not allege that the property was not subject to taxation, or that *all* the taxes for which the property was sold had been paid. Of these ingredients the act of sale furnished *prima facie* evidence; and not being assailed for the want of either, it is full proof of their existence."

Except as modified by our opinion in Augusti vs. Lawless, 45 An. 1730, wherein it was held that the description of the property in the assessment was insufficient to identify the *locus in quo;* and in Edwards vs. Fairex, 47 An. 170, wherein it was held that an assessment continuously made in the name of a man long since dead was illegal and void, the principles announced in the Lake and Douglass cases have been steadily adhered to and maintained by this court.

The assessment of the property in controversy was made in 1873 in the name of H. C. Dibble, tutor. In that year it was retroceded by Berens to H. C. Dibble, tutor, for the minors of his marriage with Sarah M. Chappel, who was then dead. That assessment was perfect and valid. From the assessments of 1874 and 1875 the word " tutor " was omitted; but in the assessments of 1876 and 1877 it was again included. In 1878 it was again omitted. Inasmuch as there are *three* annual assessments made against H. C. Dibble, tutor, and, therefore, perfectly legal, and no portion of the taxes of those years was shown to have been paid prior to the sale on the 29th of April, 1885, the same is likewise perfectly legal and valid. The apparent invalidity of the assessments of *three* of the years, taxes under which formed an element in the sale proceedings, can not invalidate the sale thereunder.

In Citizens Bank vs. Augusti, 46 An. 520, we said:

" The law does not contemplate that the assessor shall test titles in order to make assessments of property.

" A *prima facie* title suffered to remain unquestioned on the official records, taken in good faith as a basis for the assessment, is a compliance with the requisition of the statute regarding assessments."

In this instance the title stood in the name of H. C. Dibble, as tutor for the minors of his marriage with the late Sarah M. Chappel. Can it be doubted that the assessing officers examined that title

preparatory to making those assessments and that it was "taken in good faith as a basis for the assessment" as made? It can not.

On the law and the facts, we are of opinion that the defendant Fellman's title is good and that the judge *a quo* properly rejected the demand of plaintiffs.

Judgment affirmed.