No. 7841

First Circuit

———

HOLMES  AND  BARNES  v.  SHAWNEE
MILLING  COMPANY

———

(April 1, 1926, Opinion and Decree.)

———

(*Syllabus by the Editor.*)

1. **Louisiana  Digest—Courts—Par.  9.**

Under Civil Code Article 9, property within
the limits of the state of Louisiana
belonging to the resident of another
state is subject to the laws of this
state, and therefore an error in a draft
can be corrected in order to determine
the title to certain movable property.

2. **Louisiana  Digest—Attachment—Par.  80.**

An attaching creditor has no greater rights
in the property attached than the
debtor had at the moment of the
seizure.

3. **Louisiana  Digest—Error  and  Mistake—
Par.  5.**

A draft can be reformed for mutual error,
participated in by the drawer only
where such error is established.

4. **Louisiana  Digest—Pleading—Par.  7;
Bills  and  Notes—Par.  193.**

A suit as owner is not inconsistent with
a suit as pledgee, because a pledgee
may treat a negotiable draft as his
own, sue on it as owner, and recover
to the extent of his interest.

5. **Louisiana  Digest—Bills  and  Notes—
Par.  219;  Error  and  Mistake—Par.  5, 18.**

The burden of proof is on the one who
endorsed a draft "for collection" that
this was done in error.

6. **Louisiana  Digest—Attachment — Par.
162.**

Attorney's fees for dissolving an attach-
ment are not allowed unless proven.

Appeal from the District Court, Parish of
East Baton Rouge, Hon. W. C. Jones,
Judge.

Action by Holmes and Barnes, Ltd.,
against Shawnee Milling Company. The
Bank of Topeka, intervenor and third oppo-
nent, to have the wording of a draft cor-
rected and rendered effective as reformed.
There was judgment for plaintiff and the
intervenor appealed.

Judgment affirmed except the attorney's
fees were disallowed.

Taylor and Porter, of Baton Rouge, attor-
neys for plaintiff, appellee.

L. A. Himes, of Baton Rouge, attorney
for defendant, appellee.

Bank of Topeka, intervenor and third
opponent, Laycock, Borron and Laycock,
of Baton Rouge, attorneys for third oppo-
nent.

ELLIOTT, J.    Shawnee Milling Com-
pany of Topeka, Kansas, drew a sight
draft on Holmes & Barnes, Ltd., of Baton
Rouge, Louisiana, for $1075.00 payable to
the order of the Bank of Topeka, for col-
lection to the account of the drawer, at-
taching to the draft a bill of lading as
security, issued to Shawnee Milling Co.,
for 500 barrels of meal consigned to
Holmes & Barnes, Ltd., the drawee. The
Bank of Topeka endorsed the draft and
sent same with the bill of lading attached
to Louisiana National Bank of Baton
Rouge to be collected, the proceeds to be
remitted to the Bank of Topeka. Holmes
& Barnes, Ltd., paid the draft, received the
bill of lading, and obtained the meal; but
at the same time attached the price in
possession of Louisiana National Bank, to
the extent of $825.00 alleging that same
was the property of Shawnee Milling Co.,
and that the said milling company was
indebted to it to that extent. Shawnee
Milling Co. made no appearance in the
case.

Louisiana National Bank appeared but only to claim protection upon delivery of the funds to the party held entitled thereto.

The Bank of Topeka of Topeka, Kansas, intervened in the suit and opposed plaintiff's demand. It alleges in its petition of intervention that while said draft recites that it is drawn in favor of the Bank of Topeka "for collection", in truth and fact the draft was not handled for collection but was purchased by intervenor for value in due course, together with the bill of lading attached. That the appearance in the draft of the words "for collection" was by error caused by the use through oversight of a printed form of collection draft in general use.

The plaintiff answered the intervention and denied the allegation of the Bank of Topeka, alleging that the money seized belongs to Shawnee Milling Co. its debtor.

The district judge for written reasons rendered judgment in favor of the plaintiff as prayed for. The Bank of Topeka has appealed.

The plaintiff expresses doubt in its brief that error in a draft, such as intervenor alleges in this case, can be corrected, even if it exists for the reason that the court here has not jurisdiction in personem over the drawer. Property within the limits of the State of Louisiana belonging to a party resident of another state, is subject to the laws of this state, C. C., Art. 9. When the right and title to such property as is in question here and it is necessary to correct an error, such as is alleged, in order that the title to the property may be determined, the court here has authority to act. If an error of the kind could not be corrected, then there is no use for the courts.

There is no merit in plaintiff's further contention that even if there is error in the draft, such as intervenor alleges, it can not be corrected to the prejudice of an attaching creditor of the drawer, who has seized the proceeds before the error is discovered. The law protecting a bona fide purchaser of real estate, buying on the faith of the recorded title has no application to this case. Neither is plaintiff's rights the same as that of a note who has acquired same for value, before maturity in due course, without notice of error in the wording.

It is well settled that an attaching creditor has no greater rights in the property attached than the debtor had at the moment of the seizure. Smith vs. Duncan and Jackson, 1 Mart. (O. S.) 26; Executors of Liddell vs. Rucker, 13 La. Ann. 570; Wilson and Company vs. Lizardi, 15 La. 255; Deloach vs. Jones, 18 La. 447; Frazier vs. Willcox, 4 Rob. 517; Bach vs. Goodrich, 9 Rob. 391; Goodhue vs. McClarty, 3 La. Ann. 56; Cammack, Squires and West vs. Floyd, 10 La. Ann. 351; Robertson, Hudson and Pullman vs. Scales and Gibson, 15 La. Ann. 545; Ober, Nanson and Company vs. Matthews, 24 La. Ann. 90; Block, Britton and Company vs. Barton, Miller and Company, 27 La. Ann. 89; Fort Pitt National Bank vs. Williams, 43 La. Ann. 418, 9 South. 117; Kern vs. Day, 45 La. Ann. 71, 12 South. 6; Grisby Const. Company vs. Colly, 124 La. 1071, 50 South. 855.

The right of an attaching creditor is similar to that of the holder of a judicial mortgage, C. C., Art. 3328. The plaintiff therefore acquired the right and title of Shawnee Milling Co. to the proceeds of the draft as the same existed at the moment of the attachment and no more.

Plaintiff further contends that intervenor's petition does not allege mutual error on the part of Shawnee Milling Co., and

intervenor. We think intervenor's allegations and prayer sufficient to justify its demand. It is true, intervenor did not on the trial move for a default, nor offer evidence against defendant, but plaintiff does not urge that as an objection and stands in defendant's place and rights; we therefore take up the questions which concern the merits of the controversy.

The record shows close and frequent dealings between Shawnee Milling Co. and the Bank of Topeka. The draft follows in the matter of form their general course of dealing.

The cashier of the Bank of Topeka testifies that the words "for collection" used in the draft, were sometimes stricken out of the drafts obtained from defendant and sometimes not. This course of conduct weighs against the alleged error in the draft in hand. The cashier and discount teller of the Bank of Topeka both testify that the Bank of Topeka purchased this draft and that the words "for collection" appearing in it are there by error and oversight due to the use of a printed blank in general use by the bank. But their evidence also shows that their bank did not purchase it in the sense that current money was paid for it, but that the bank received it at the same time with some other drafts and gave defendant credit for a sum which included it at its face value. That defendant checked out this draft, but we understand from the evidence that there was no check against this particular draft but that an amount was checked out which included it. That defendant's checking account was considered overdrawn at the time the deposit was made and continued to remain overdrawn.

It does not appear from the evidence of the cashier and discount teller that the Bank of Topeka intended at the time this draft was received from defendant's bookkeeper to make it different from the other drafts received from defendant at the same time; but that it was received to be collected for account of defendant, in the form in which it was drawn without any particular arrangement in regard to it. It was drawn "for collection" and intervenor endorsed it in the same way and it is a proper inference from the evidence of intervenor's witnesses that defendant was expected to pay interest on the amount of the draft; this one just like the others, from the time they were deposited until they were paid.

The endorsement "for collection" just as it was drawn and charge if interest is not in harmony with the purchase and error alleged by intervenor. The fact that only the cashier and discount teller were called on to testify indicates that the draft was received by them in the form drawn, without special arrangement of any kind.

The testimony of the bookkeeper of Shawnee Milling Co. taken by intervenor, does not support the conclusions of intervenor's cashier and discount teller. The fact that defendant's bookkeeper was the only party connected with defendant called on to testify indicates that there was no special arrangement made concerning this draft that it was drawn in the usual form and deposited in the general routine. Defendant's bookkeeper testifying in the case says he does not remember making any particular transaction with the Bank of Topeka concerning this draft and does not know of any being made. The inference from what he says on the subject is that there was no error on part of defendant in drawing and depositing the draft for collection as was done. He declined to say the Bank of Topeka acquired an interest in the draft and bill of lading. Asked in a direct interrogatory if the words "for

collection" were in the draft through error, his answer is in effect in the negative because instead of answering the question he explains that he did not say that the Bank of Topeka acquired full ownership of the draft and does not know what arrangement the bank had with Shawnee Milling Co. about the matter. Asked if it was not a fact that he had no idea how the words "for collection" came to be in the draft and that it was only called to his attention after the proceeds had been attached and his answer is, in effect, that all the drafts were deposited by him to the account of Shawnee Milling Co. in the regular routine of business. That he had been a student of accounting and that the words "for collection" on a draft means just what it says. Further testified that to the best of his recollection the Bank of Topeka charged Shawnee Milling Co. interest and exchange on every draft deposited by him.

The proper deduction from the testimony of defendant's bookkeeper, the only party connected with defendant whose testimony was taken by intervenor is that there was no error in the wording of the draft and that it was not purchased, but deposited with intervenor for collection.

The alleged error and purchase is not established and certainly there was none established on the part of Shawnee Milling Co. The draft could be reformed for mutual error, participated in by the drawer, but the error is not established. There was certainly no mutual error, consequently the reform prayed for by intervenor can not be granted. Davega and Company vs. Crescent Mutual Insurance Company of New Orleans, 7 La. Ann. 228; Gaudet vs. North Rivers Ins. Company, 156 La. 719, 101 South. 118; Brodie vs. Atlas Assurance Company, 158 La. 695, 104 South. 620.

Intervenor urges in an alternative argument that it makes no difference as to its rights, whether the draft was purchased or the amount loaned by intervenor to defendant. That if it was not a purchase, then the credit received by defendant was a loan and the draft and bill of lading attached was delivered to intervenor in pledge as security for the loan. That if the facts and circumstances do not show a purchase, then they do show a loan and pledge to intervenor as security for the loan, perfect by delivery, and that same can not be defeated by plaintiff's subsequent attachment. That intervenor's suit as owner, is not inconsistent with a pledge, because a pledgee may treat a negotiable draft as his own, sue on it as owner and recover to the extent of his interest.

The holder of a negotiable note or draft as pledgee, may sue on it as owner. Dibble vs. Leppert, 47 La. Ann. 800, 17 South. 309; Fidelity and Deposit Company vs. Johnson, 117 La. 880, 42 South. 357. But a loan or pledge can not exist without an agreement and intent to that effect express or implied. The fact that defendant delivered the draft with bill of lading attached to intervenor for collection, received credit for its face value, checked out the amount of the credit, its checking account being overdrawn at the time; that intervenor sent the draft with bill of lading attached for presentation, it was duly presented and paid, does not of itself create a loan and pledge when there is not a word said by any of the witnesses from which it can be inferred that intent to loan or pledge existed. The alternative argument urged with persuasive force by intervenor is not supported by any evidence and therefore can not be entertained.

Returning to the subject of error, intervenor's endorsement on the back of the draft is for collection. The burden of proof to show the error is on intervenor,

Ober, Nonson & Co. vs. Matthews, 24 La. Ann. 90. The error is not established and it follows that intervenor possessed the draft for defendant.

We are satisfied from the evidence that the real understanding between Shawnee Milling Co. and the Bank of Topeka was, that the bank received the draft for collection, just as it was drawn, but was to become the owner of the proceeds, if such proceeds were realized and collected. But at the time the attachment was effected these proceeds had not been received by the Bank of Topeka and were therefore still the property of Shawnee Milling Co., and as such liable to attachment by plaintiff on account of the amount due it by the defendant.

Intervenor cites Stricker vs. Singleton, First National Bank of Union Springs, intervenor; a case decided by this court several years ago. The original opinion of this court is not in the record of the case and we have not a certified copy; but a copy which we take to be a true one is annexed to intervenor's brief.

In that case this court held that the evidence warranted finding that the transaction between intervenor and defendant was in the nature of a loan, made by discounting a draft which was secured by the pledge of a bill of lading. That the respective rights of a pledgee of a bill of lading and of the drawee of a draft attached thereto, when after taking up the draft and obtaining the bill of lading and goods; it is found that there is a shortage in the goods shipped was therefore to be determined.

In the case cited the court found that Singleton's draft had been discounted, a loan made to him by First National Bank of Union Springs and that the relationship of pledgor and pledgee existed between them. The litigation which we now have in hand does not justify such a conclusion.

In the case cited Singleton shipped peas to Stricker from another state and drew on him a draft with bill of lading attached for an amount greater than was due him under the shipment with Bank of Union Springs as payee. Singleton received credit from the bank for the amount of the draft although the peas were short and the shortage was not discovered by Stricker in this state until he had paid the draft, upon which Stricker attached the funds up to an amount sufficient to cover the shortage. The funds were in this state at the time of the attachment and the case in that respect is like the one we have in hand. Whether the amount of the draft was the result of an honest or an intentional overdraft; the judgment enabled Singleton to keep the amount of the draft to which he was not entitled to the injury and prejudice of the drawee. The property attached was within the limits of this state, C. C., Art. 9, and Singleton could not and did not pledge more peas than he had shipped; therefore the excess called for by the draft was not pledged and the attachment should have been sustained.

The case cited does not appear to be a proper guide for the decision of the present case.

The judge of the lower court considered the present case very colsely as shown by the opinion in the record. We have come to the same conclusion as did the judge a quo.

The judgment appealed from is correct

except that we do not think the $100.00 attorney's fees claimed by the plaintiff should have been allowed under the law. Attorney's fees amounting to $100.00 in favor of the plaintiff is included in the judgment appealed from.

The judgment appealed from will be amended by disallowing the $100.00 allowed as attorney's fees and as thus amended, the judgment is affirmed. Intervenor to pay the cost of its intervention. Defendant the cost of the main demand and plaintiff and appellant the cost of the appeal.