In a well written opinion, the lower Court has clearly set forth the issues in this case and after giving its reasons for disagreeing with the decision of the Supreme Court in the case of Deano, Inc., v. Michel, 191 La. 233, 185 So. 9, decided by that Court October 31, 1938, felt bound to follow it. It therefore, against its better judgment, rendered judgment for defendant, rejecting plaintiff's demands. The opinion of the lower Court is as follows:
"Plaintiff, a duly licensed realtor, brings this suit to recover of Jack Halliburton $500.00 commission on the sale of his home. The testimony discloses that Jack Halliburton on July 12, 1943, at about 2:30 P.M., phoned Mr. Neal, whom he had known for years to be a broker, in regard to selling his house. Neal promptly went to his home and was told that $10,000 was the price demanded. In defendant's presence and with his knowledge, Neal tried to get Max Goldberg, a prospect, on the phone, but could not reach him. That night Halliburton went to New York. The next morning Neal took Goldberg and his wife out to see the place. They were received and shown around by Mrs. Halliburton, who discussed the price with them and offered no objection to the sale.
"Goldberg agreed to take the house for $10,000.00 and deposited $1000.00 with Neal to bind the sale. Then, under the perfectly valid, existing contract, Neal on July 13, 1943, had procured a responsible purchaser at the price fixed by Halliburton. A deposit of $1000.00 had been made. Mrs. Halliburton was notified and did not object. Goldberg gave up and lost the opportunity to buy another house. All that remained to be done was for Halliburton to return, execute the deed and receive the price. As between the parties a sale is considered perfect when there exists an agreement for the object and for the price thereof. Civil Code, Article 2456. Neal had earned his commission. Mathews Bros. v. Bernius, 169 La. 1069 [126 So. 556].
"But, on July 16th, Mrs. Halliburton recorded an instrument designating the property a family homestead in accordance with Act 35 of 1921, which provides that after such recording the property described shall not thereafter be validly sold except with the consent of the wife expressly set forth in the deed signed by her.
"Homestead laws are in derogation of common right and must be accorded a strict construction. Galligar v. Payne, 34 La.Ann. 1057; Kinder v. Lyons, 38 La.Ann. 713.
"The only prohibition contained in this Act is that a homestead cannot validly be sold by the husband alone after the recording of the designation. It does not abrogate by its terms, and should not by inference, valid personal obligations of the community complete and existing before the recordation.
"Of course, the courts will not countenance the attempt of a deserting husband to circumvent the efforts of his wife to protect her homestead, as was the case in Mallouf v. Fontenot, Sheriff, 170 La. 612, [128 So. 652]. The only circumvention attempted in the present case is to beat Mr. Neal out of a proper commission, duly earned with the utmost good faith after full notice to the wife. The Act was intended for the protection of the wife in her homestead rights and not as an instrument for the avoiding of just community personal obligations.
"Clearly, under the Act, the wife can block the sale. We would have no difficulty in holding that she could not defeat the accrued rights of Neal to his commission were it not for the opinion of the Supreme Court in the case of Deano v. Michel,191 La. 233, 185 So. 9, overruling the Civil District Court and the Court of Appeal for the Parish of Orleans.
"In disallowing a realtor's commission under identical circumstances, the Court said it was through no fault of the husband that the sale was not consummated; that the realtor knew the property constituted the family homestead, and that to enforce his demand for a commission would lead to absurd consequences.
"Conventional obligations do not involve questions of fault. Their enforcement depends upon their validity at the time they were entered into and their performance by the party seeking relief. Certainly, the sale was blocked by the fault of the partner in community. The husband is responsible for the torts of his wife on a community errand. Why is he not responsible for her acts in regard to community property? *Page 627 
"The fact that the homestead character of the property was known to the realtor is not pertinent. It is well settled that a third person dealing with immovable property need not look to the public records, since notice or knowledge outside the record is not equivalent to registry. Until the designation was recorded, the husband as head and master of the community, had full authority to sell or mortgage the property. Civil Code, Article 2266; McDuffie v. Walker, 125 La. 152 [51 So. 100].
"As to absurd consequences, we do not see how this term can apply to plaintiff's demand for compensation for services performed under a valid contract entered into by the head and master of the community. The wife is not a third person, but is a partner in the community. To hold that she in good faith or bad can defeat accrued community personal obligations by subsequently recording an ex parte instrument seems to us most unreasonable. It is at least, as in the present case, most unjust. We think the whole matter rests upon the clear distinction between the right to prevent the sale and the right of a third person to recover for services performed.
"Act No. 35 of 1921, Ex. Sess. gives to the husband first the right to record the designation of a homestead. It is only when the husband refuses or neglects to do so that the wife can act. The effect is identical. Suppose, in this case, the recording had been made by the husband. Would it be held that he could thus avoid obligations incurred in good faith? We understand that it is our duty to follow the rulings of the appellate courts and do so most respectfully. We, however, do not think it out of place to express our disagreement in the present instance.
"On August 3, 1943, after the filing of the designation by the wife, plaintiff by supplemental petition prayed for and obtained a writ of attachment under which the real property involved was seized. The ground alleged is that defendant is about to leave the State and is converting his property into cash; that judgment and execution in regular course cannot be obtained before his departure. Defendant filed a motion to dissolve, claiming $150.00 because of the illegal and wrongful issuing of the writ, and $150.00 attorney's fees. This motion was referred to the merits with reservation of defendant's claim for damages.
"Defendant's occupancy and use of the premises were not interfered with by the seizure. Actual damage is neither alleged or proven, which reduces the issue to the claim for attorney's fees. While the reservation preserved defendant's right to claim attorney's fees, the fact that no actual damages were sought to be recovered and that the work of the attorney consisted of the filing of motion and the asking of a few questions on the trial on the merits is to be considered in arriving at any amount to be allowed.
"There is no question that defendant told the plaintiff that he expected to go to Mexico, and that the confidence of plaintiff in defendant was justifiably shocked by the apparently collusive and bad faith actions of defendant and his wife. It is not shown that there was any other property out of which a judgment could have been satisfied. The home place could have been sold at any time to other parties by the wife joining in the deed.
"Section 1 of Article 240 of the Code of Practice provides that a creditor may obtain an attachment where his debtor is about to leave the State permanently without there being a possibility of obtaining and executing upon a judgment in ordinary course. We think sufficient ground is proven under this section. American Hardwood Lumber Company v. Kesterson, 147 La. 840 [86 So. 285]; Grigsby Construction Company v. Colly, 124 La. 1071 [50 So. 855].
"For the reasons above assigned, plaintiff's demand is rejected at his cost."
Plaintiff is now prosecuting an appeal from the judgment of the lower Court and defendant has answered the appeal praying that he be awarded damages as attorney's fees in the sum of $150 for dissolving the writ of attachment.
The case of Deano, Inc., v. Michel, cited supra, is identical in every respect with the case at bar and is the law in this State. It was passed upon by a full Court without a dissent in 1938, and is authority for the judgment of the lower Court on the merits.
The only remaining question is the one for damages for attorney's fees in dissolving the writ of attachment. The motion to dissolve was referred to the merits with the reservation of right to claim damages. There was no separate trial and the attachment was only dissolved because the Court found plaintiff was not entitled to a commission under the law. It *Page 628 
is clear from the opinion of the lower Court that the attachment would not have been dissolved if the motion to dissolve had been tried separately from the trial on the merits, finding that the grounds for attachment were sufficient, provided plaintiff's claim was a just, legal claim. We agree with the lower Court in that respect. The grounds alleged in the motion to dissolve were correctly held by the lower Court not to have been established and that the allegations made by plaintiff to obtain a writ were sound in law and established in fact. Since defendant is not entitled in law to damages as attorney's fees for defending the suit on its merits, he is not entitled to have the judgment for damages for attorneys fees.
The judgment of the lower Court is therefore affirmed with costs.