26 So.2d 12

**WATSON v. BETHANY et ux.**

No. 37867.

March 18, 1946.

Rehearing Denied April 22, 1946.

Cecil N. Bankston and Johnson & Kantrow, all of Baton Rouge, for defendants-appellants.

Fred G. Benton and John R. Frídge, both of Baton Rouge, for plaintiff-appellee.

HAMITER, Justice.

The judgment from which the defendants herein, John Bethany and Mrs. Catherine R. Bethany (husband and wife), are prosecuting this appeal decreed the declaration of family home or homestead executed and filed by Mrs. Bethany on December 20, 1943, to be subordinate to the rights of plaintiff, Warren O. Watson, that arise under an option to purchase of date November 29, 1943, granted to him by John Bethany. Further, it decreed specific performance under the option, ordering and directing defendants to execute in favor of plaintiff a title to the affected immovable property free from any and all claims growing out of such homestead declaration.

The case was tried, following the court's overruling of defendants' exceptions of misjoinder of parties, of improper cumulation of actions, and of no right and no cause of action, on a written agreement of counsel that discloses the hereinafter detailed facts.

On November 29, 1943, John Bethany, in consideration of $250 paid to him by check, sold and granted to Warren O. Watson a 60-day option to purchase for the price of $12,750 a parcel of ground with the buildings and improvements thereon situated in the City of Baton Rouge, the property constituting the family home of Mr. Bethany and his wife and belonging to the community of acquets and gains existing between them. The agreement, evidenced by an instrument notarial in form and which

was recorded on November 30, 1943, in the Conveyance Records of East Baton Rouge Parish, provided that if the option be exercised the $250 paid therefor would be credited on the purchase price of $12,750.

On December 20, 1943, before Watson's acceptance of the husband's offer to sell, Mrs. Bethany executed a declaration of family home or homestead, pursuant to the provisions of Act 35, Ex.Sess. of 1921, and caused it to be recorded in the Conveyance Records of East Baton Rouge Parish. Shortly thereafter John Bethany mailed to plaintiff the check of $250 given for the option, informing him of Mrs. Bethany's filing of the declaration and expressing a desire to withdraw from their agreement. In a letter of December 27, 1943, plaintiff returned the check and affirmatively declined to release Bethany from the obligation. On January 5, 1944, Watson caused to be presented to Bethany, in the presence of a notary public and two witnesses, an act of sale for his signature, and at the same time tendered in cash the balance ($12,500) of the agreed purchase price. Bethany refused to sign.

On January 25, 1944, plaintiff again wrote to Bethany, summarizing the events occurring to that date and stating that in his opinion the homestead declaration of Mrs. Bethany did not prejudice his rights under the option. Further, Watson stated:

"I received your letter on December 27th and immediately returned my check to you, advising that it was my intention to go

through with my option for the purchase of your property.

 * * * * * *

"You have caused your wife to file the declaration of homestead in an attempt to create a defect in the title, and I now call upon you to have your wife waive the matter and join you in signing a title to the property immediately.

"I hereby advise you that unless you give me a good title to the property involved not later than Thursday of this week, January 27th, it is my intention to file suit against you for specific performance under the option and against your wife to remove the cloud she has placed upon the title, * * *."

The instant action against Mr. and Mrs. Bethany was instituted by Watson on January 28, 1944, within the 60-day period provided by the terms of the option.

Presenting the first question to be determined on this appeal are the exceptions of misjoinder of parties defendant and of improper cumulation of actions that were overruled by the trial court. Under them it is argued that the respective interests of the husband and wife are contrary to and exclusive of each other, and therefore the parties can not be joined in the suit nor can the action against them be cumulated.

█ In Reardon v. Dickinson, 156 La. 556, 100 So. 715, 716, this court said:

" * * * The test to be applied in considering a plea of misjoinder is whether the parties, plaintiffs or defendants, have a common interest in the subject-matter of the suit."

This test has been approved in several subsequent decisions including State ex rel. Elston v. Parish Democratic Executive Committee, 173 La. 844, 138 So. 857, and Lykes Bros. Ripley S. S. Co., Inc., v. Wiegand Marionneaux Lumber Co., Inc., et al., 185 La. 1085, 171 So. 453, 458. In the latter the court concluded by saying:

"The sole and only issue before the court as against all of the defendants is whether or not they intentionally presented false railroad freight bills and incorrect export declarations to the plaintiff, as a part of a systematic plan to secure transportation at less than the lawful established rates. It is evident that the causes of action against the defendants is of cognate origin and that they have a common interest in the matter to be adjudged, which can be decided in one judgment, thereby avoiding a multiplicity of lawsuits."

█ The parties joined here as defendants have a common interest in the outcome of the litigation, for the question of whether or not the husband can or must perform specifically under his agreement necessarily involves the efficacy of the wife's declaration of homestead. Hence, they are proper parties to the suit and there exists no inconsistency of actions. The exceptions, in our opinion, were correctly overruled.

The questions of law raised by the exceptions of no right and no cause of action,

overruled by the district court and reurged here, are discussed in connection with our consideration of the merits of the case.

■ The option obtained by plaintiff was executed on November 29, 1943, and recorded the following day. Under it the optionee had a period of 60 days, or until January 29, 1944, in which to exercise his right to purchase the property. That this right was never exercised is one of the defenses offered on the merits of the case, defendants insisting that plaintiff failed to furnish a written acceptance sufficient to render the option enforceable. In our opinion the letter of January 25, 1944, the pertinent parts of which are quoted hereinabove, constituted an acceptance. By the language used in that letter plaintiff clearly and unmistakably manifested a decision to accept the husband's offer of sale. It amounted to such an acceptance that could be enforced against plaintiff if Mr. Bethany sought to compel him to take title.

Next, defendants contend that the filing of the declaration of homestead by Mrs. Bethany, pursuant to Act 35, Ex.Sess. of 1921, had the effect of preventing a valid sale of the property until she gives consent therefor. The named statute authorizes the wife to designate as a family home, by a properly recorded instrument and in default of the husband's doing so, community property occupied by her and the husband, and it provides that upon the making of the designation "such particularly described property shall not thereafter be validly sold or mortgaged during the marriage by the husband except with the consent of his wife * * *."

■ What plaintiff Watson had when Mrs. Bethany filed her declaration on December 20. 1943. was a previously recorded option to purchase the property at any time up to January 29, 1944. It embraced the husband's continuing offer to sell which could not be withdrawn prior to that date. Upon plaintiff's acceptance of the offer on January 25, 1944, as was done, there arose between him and the husband an agreement to sell susceptible of being specifically enforced by either party. Revised Civil Code Article 2462; Moresi v. Burleigh, 170 La. 270, 127 So. 624.

It is true that in Baumann v. Michel, 190 La. 1, 181 So. 549, as well as in Neal v. Halliburton, La.App., 19 So.2d 625, cases strongly relied on by defense counsel, it was held that a wife's declaration of the family home prevails over an agreement to sell previously executed by the husband with a prospective purchaser, thus preventing the sale of the property without the wife's consent. But in those cases the agreements were not of record when the declarations' filing occurred, a fact that distinguishes them, we think, from this controversy.

■ The effect of the registering of contracts, such as mortgages, sales, options, is to give notice to the world of their confection and to provide protection to the owner of rights thereunder against transactions involving third persons. Under the

law of registry as it concerns the filing by a wife of a declaration to prevent a husband's selling the family home the wife must be considered as a third person. We concur in the comment of the district judge that:

"To hold that the wife has acquired by reason of Act 35 of 1921 Ex.Sess. a status with respect to the effect of. registry different from that of any body else would be to indulge in a sort of liberality not sanctioned by any statute of this State known to me or any to which my attention has been called."

The right granted the wife by such statute are individual and personal, and are to be exercised by her independent of the husband with the same legal effect as if she were a third person. Without that legislative authorization, or upon failure to comply with the statute's specific provisions, she has no legal means of preventing a bona fide sale by the husband of the family home the title to which stands in his name.

In maintaining that a wife can effectively file the declaration of family home at any time up until an act of sale has been executed by the husband, regardless of any recordations of prior agreements concerning the disposal of the property, defense counsel cite Reymond v. Louisiana Trust & Savings Bank, 177 La. 409, 148 So. 663, 665, in which this court said:

"Section 3 of article 11 of the Constitution relating to the waiver of the homestead exemption and Act 35 of the Ex.Sess. of 1921 must be read and construed together. The legislative act supplements the constitutional provisions with reference to the waiver. * *. * "

Then counsel, to quote from their brief, argue:

"It has never been questioned that any party accepting a mortgage must at his own risk, inquire into the status of the property mortgaged to ascertain whether or not the property is being occupied as a homestead or family home, and if so, to specifically incorporate in the act of mortgage, if he desires such protection, a homestead waiver, which must be signed by both the husband and the wife. (Section 3, Article 11, of the Constitution). By Act 35 of the ES 1921, the Legislature has given the wife further protection to preserve her interest and that of the family dependents in the family home. * * * "

 The referred to Section 3 of Article 11 of the Constitution authorizes a person to waive the homestead exemption that is granted from seizure and sale by Section 1 of the same article, "provided, that if such person be married, and not separated from bed and board from the other spouse, then the waiver shall not be effective unless signed by the latter." Under that provision the wife can claim the homestead exemption even if the husband waives it. But the above quoted argument of counsel, predicated on the provision of the Constitution, is not appropriate here. The Constitution, in very exact language, relieves

both the husband and wife of the obligation of registering the homestead to enjoy the exemption from seizure and sale. The mentioned Section 1 of Article 11 specifically states: "There shall be exempt from seizure and sale by any process whatever except as herein provided, *and without registration,* the homestead, bona fide * * *." Thus that exemption exists as a matter of law, no registration being required. Act 35 Ex.Sess. of 1921, on the other hand, does not contain the non-registration provision. On the contrary it provides for the recordation of the declaration in the conveyance records of the parish in which the property is located. By that requirement of the statute there is contemplated, it would seem, some accord with the general registration law of the state. If this was not so the wife would have been afforded the privilege, just as she has, with reference to the exemption from seizure and sale of the property, to assert her statutory homestead claim without the necessity of filing a declaration. From the fact that recordation of such declaration is specifically required, the legislative intent appears to have been that, in keeping with the registration law, all bona fide transactions confected by the husband and recorded prior to the filing of the declaration are valid and binding on the wife.

It is interesting to notice that in the Parish of Orleans. the constitutional exemption from seizure and sale is without effect, unless a declaration of homestead is re-

corded, just as is the exemption granted by the provisions of Act 35 Ex.Sess. of 1921. Section 4 of Article 11 of the 1921 Constitution states: "In the Parish of Orleans, the homestead [exemption] to be valid shall be recorded as is now, or may be, provided by law." In considering that provision (rather its counterpart which is Article 247 of the Constitution of 1913) in Clarke v. Natal, 138 La. 1038, 71 So. 149, 150, this court held that in Orleans Parish the recordation of a declaration of homestead does not affect a prior mortgage and the rights arising under it. To reach that conclusion, it was reasoned:

" * * * The defendant in this case had no homestead exemption when she gave the mortgage on her home, and the subsequent registry of her declaration could not prejudice the rights of the mortgagee. To hold otherwise would be contrary to our laws of registry, and would be an unreasonable construction of the provisions of the Constitution and statute on the subject."

Since, therefore, Mrs. Bethany, under the peculiar circumstances of this case, is deemed a third person, her rights under the declaration of homestead that she filed are subordinate to those of the optionee, Watson. Although the option was not accepted by him until after the declaration's filing, it was recorded prior thereto. An acceptance of the option within the period permitted, as was done here, dates back to the time of recordation in so far as third

persons are concerned. Kinberger v. Drouet, 149 La. 986, 90 So. 367.

For the reasons assigned the judgment is affirmed.