JANVIER, Judge.
This is a suit for a real estate agent’s commission which is claimed to have been earned by obtaining a purchaser ready, willing and able to buy at the price at which the prospective vendor agreed to sell.
The defense is that the sale could not be consummated because after the contract to sell had been entered into, the wife of the prospective vendor, (one of the defendants here) acting under authority of Section 2 of Act 35 of the Extra Session of 1921, now R.S. 1950, 9:2802, registered in the office of the Register of Conveyances for the Parish of Orleans a declaration that the property, which was involved in the transaction, constituted the family home.
The real estate agent, Mrs. F. Blackshea^ is the wife of Dr. Stephen M. Blackshear, and he, as head of the community, brought the suit for ,the commission claimed to have been earned by her in her capacity as real estate agent.
In the district court, there was judgment for plaintiff for $40.61, representing the expenses' which the real estate agent incurred in .’obtaining the prospective purchaser, but rejecting the claim for the commission stipulated for in the contract. From this judgment plaintiff has appealed. Defendants have not answered the appeal.
In a carefully prepared written statement of his reasons for judgment the district judge discussed all of the facts and the law. His discussion is so thorough, and so adequately presents our views, that we have decided to adopt it as our own and on our part to discuss none of the questions involved except the refusal to allow recovery for attorney’s fees. We discuss this matter because counsel for plaintiff complains -that in his opinion the district judge “glossed over the attorney’s fees.”
The written reasons follow:
“This suit is brought by Dr. Stephen M. Blackshear on behalf of his wife, Mrs. May-bart Frost Blackshear, against Herbert M. *690 Landey. Mrs. Blackshear is a real estate broker and agent in the City of New Orleans, and it is shown by the evidence that Mr. Herbert M. Landey solicited her services as real estate agent and broker to sell the premises 1309 Octavia Street, this city, which said property formed part of the community of acquets and gains existing between himself and his wife and was occupied by them as a family home.
“Mrs. Blackshear, at the instance of the defendant, listed the property on the regular form of the New Orleans Real Estate Board, on June 1,1, 1947. This listing included all the furniture except the furniture in the owner’s apartment. Mr. Landey signed an offer to sell, dated August 23, 1947, which is on file in these proceedings.
“It is shown by the record that on numerous occasions the property was shown to prospective purchasers by Mrs. Blackshear and her agents, and that Mrs. Landey, one of the defendants herein, cheerfully cooperated in exhibiting the property to the prospective purchasers, and that on August 23, 1947, through the efforts of Mrs. Blackshear and her agents, a prospective purchaser of the property was found in the person of Mrs. Evelina Crump, who signed an agreement to purchase in the sum of $15,500, which said agreement was accepted by the defendant Herbert M. Landey.
“It is also shown by the record that the date October 1, 1947, was fixed for the passage of the act of sale before Elmer D. Flanders, Notary Public, and that the Notary refused to pass the act of sale because of the fact- that between the date of the offer, August 23, 1947, and October 1, 1947, defendant Mrs. Erna Inez Spell Landey appeared before a Notary Public in the City of New Orleans on August 26, 1947, and executed a declaration of homestead as the wife in community insofar as the property 1309 Octavia Street was concerned, under the provisions of Act 35 of the Extra Session of 1921, declaring the said property as a home, said declaration being recorded in C.O.B. 557, folio 103; M.O.B. 1719, folio 599, for the Parish of Orleans, on August 27, 1947.
“Petitioner bases his claim first on a contract suit for commission, provided for in the employment agreement of June 11, 1947, and the agreement to sell dated August 23, 1947. Secondly he sues on a quantum mer-uit and relies upon the equitable doctrine of unjust enrichment. Thirdly, petitioner claims in tort, alleging that the recordation of the declaration of family home was the result of collusive conduct between the two defendants, the husband and wife, for the purpose of making impossible the sale of the property in question, and thus wrongfully attempting to deprive Mrs. Blackshear of her commission.
“Mrs. Landey never signed the contract in question. Plaintiff seeks to hold Mrs. Landey because plaintiff claims she assented to the sale of the premises by her actions in cheerfully showing prospective purchasers through the premises and never at any time interposing any objection to the sale prior to the time that the act of sale was set before the Notary, at which time there was evidence to the effect that she asked for additional time in order that she might obtain another dwelling for herself and her family.
“Mrs. Landey testified she is an ill woman, that she has children, and that she had no other place in which to live. She further testified that she was always against the sale of the property, that she discussed the matter with her husband on many occasions. She also testified that the sale of the premises 1309 Octavia Street became such á heated subject that it almost caused an estrangement between them. ■
“Mrs. Landey stated that she had shown prospective purchasers through the premises, and had not remonstrated, but that she didn’t conceive it was any of the business of the general public who were being shown ■through her premises, or of the real estate agents who accompanied them, that she was having an argument with her husband concerning the sale of the premises. No benefit accrued to her because of plaintiff’s efforts, and she was enriched in no way. It is true that the house sold one year later for approximately one thousand dollars more, but the furniture was included in the sale, whereas in the offer on file the furniture was not included in the sale.
*691 “Mrs. Landey testified that at one time she did agree with her husband to the sale of the premises, but later changed her mind and decided to avail herself of the protection of Act 35 of the Extra Session of 1921, and without her husband’s knowledge she proceeded to the office of Oscar J. Tolmas, Notary- Public, and executed an instrument declaring the property to be a family home, and caused the same to be recorded. The record also shows that about one year later the property was sold for one thousand dollars more than the offer previosuly referred to.
“Mrs. Landey didn’t sign the contract, and the court does not believe she made herself a party to the contract by her remaining silent and her actions in showing people through the house. Plaintiff contends that his principal claim is based upon quantum meruit. Insofar as Mrs. Landey is concerned, she did not employ the plaintiff or his wife, by direction or indirection. She simply showed prospective purchasers through the house. No benefits accrued to her and she was enriched in no way.
“Plaintiff’s claim against Mrs. Landey, thirdly, sounds in tort. Plaintiff claims Mrs. Landey colluded with her husband to prevent the consummation of the contract in question by the recordation of the family home exemption.
“Under the law and the provisions of Act 35 of the Extra Session of 1921, Mrs. Landey had a legal right to record her declaration of family home. Watson v. Bethany, 209 La. 989, 26 So.2d 12 which reads in part as follows: ‘The rights granted the wife under such statute are individual and personal, and are to be exercised by her independent of her husband with the same legal effect as if she were a third person. Without that legislative authorization, or upon failure to comply with the statute’s specific provisions, she has no legal means of preventing a bona fide sale by the husband of the family home the title to which stands in his name.’
“The evidence in this case falls short of establishing collusion and fraud between the husband and wife, and this court holds that she committed no fraud in exercising her legal right given to her under the statute.
“The same contentions that are made against the wife are made also against the husband. With regard to the suit upon the contract itself, performance was impossible on the part of the husband after the wife had recorded her declaration of family home which effectively prevented him from executing the deed. Accordingly there can be no recovery by the plaintiff against the husband because of his inability to go through with the contract. Neal v. Halliburton, La.App., 19 So.2d 625; Deano v. Michel, 191 La. 233, 185 So. 9; Boisseau v. Vallon & Jordano, 174 La. 492, 141 So. 38.
“The record shows that the husband paid the expenses of the Notary in connection with the certificates. The Court can find nothing in the record to show that the husband was not in good faith in this transaction.
“As previously stated, plaintiff bases his principal claim on quantum meruit against the defendants. Plaintiff says if she cannot enforce her written contract, she is entitled to be paid for work and labor done. She states, as shown by the testimony in the record, that she went to considerable time, trouble and expense in advertising the property and having her agents to show prospective purchasers through it, and that she is entitled to recover for this effort.'
“The record shows that the husband stood ready and willing to perform, and was unable to do so because of the action of his wife in recording the declaration of family home. No advantage or gain accrued to him as a result of plaintiff’s efforts. It was impossible for him to perform his contract because of a legal barrier thereto.
“Act 35 of the Extra Session of 1921 has been interpreted in the case of Deano v. Michel, supra, and in the course of its opinion the Supreme Court said: ‘Deano, Inc., must'be held to have contracted subject to the right of Mrs. Michel to record the declaration of family home.’
“So here the plaintiff, Mrs. Blackshear, must be held to have contracted subject to the right of Mrs. Landey to record a declaration of family -home, and with regard to *692 the claim based on quantum meruit the plaintiff must have exhibited the premises full knowing that Mrs. Landey had the right to record the declaration of family home. It will be noted in this case that neither the contract authorizing the plaintiff to list the property, nor the offer and acceptance, were recorded in the mortgage or conveyance office of the Parish of Orleans; that the only instrument recorded was the declaration of family home. (See also Watson v. Bethany, supra.)
“The court does not believe that the evidence in this case establishes any fraud or collusion between the defendants, husband and wife herein.
“Plaintiff has claimed, in addition to her commission, the expense to which she has been put, and as part of such expense she claims attorney’s fees on behalf of her attorney who advised her and who brought this action. The court believes that the plaintiff should be awarded her out-of-pocket expenses for advertising in the sum of $30.61, and for a sign placed on the premises in the amount of $10.00, making a total of $40.61.
“With regard to the claim for attorney’s fees, the contract on file in evidence obligates the party who defaults to pay all costs and fees for enforcement and collection of any claim. Plaintiff cites Blache v. Goodier, La.App., 22 So.2d 82, wherein the Court of Appeal awarded a judgment of $125 under a similar clause in a contract.
“The.contract in this case was impossible of fulfillment, and the court will not allow attorney’s fees based on the contract. Having decided that the plaintiff is not entitled to recover her commission on the basis of the contract, or on quantum meruit, or in tort, it follows that the attorney is not entitled to collect from the defendant attorney’s fees for the attempted enforcement of this claim.”
We shall now consider the question of attorney’s fees. • ,
It is well established, of course, that attorney’s' fees are not collectible unless they are expressly stipulated for or unless they are specially authorized by law. There is no statute which specially authorizes the collection of attorney’s fees in a matter of this kind and as the contract itself is not enforceable, the fees cannot be collected on the ground that they were stipulated for in the contract.
The recovery of actual expenses seems to be authorized by the decision of the Supreme Court in Baumann v. Michel, supra, which presented a situation very similar to that found here. There the prospective vendor could not deliver title because his wife filed a declaration of family home, and the prospective purchaser was allowed to recover, the actual expense which he had incurred in examining the title. The Supreme Court gave no reason whatever for allowing the expenses, merely saying, with reference to the defendant, “it is our opinion that the trial judge properly ordered the expenses in connection with the sale to be borne by him.” There were no attorney’s fees involved in that case, except those which were made necessary by the title examination. The fee for the filing of the suit was obviously not contemplated in the above expression by the Supreme Court.
Counsel for plaintiff, in oral argument, contended that at least a part of the fee claimed here was based on legal advice given to'the real estate agent when it became obvious that the sale could not be consummated, but in his brief he states very clearly that the fees claimed were based on the fact that the expenses could not be collected without the filing of a suit.
Whether the fees , claimed are in part based on services rendered in connection with the giving of advice concerning the duty of returning the deposit, we are unable to say, but we feel certain that the doctrine announced by the Supreme Court, that in a somewhat similar situation the expenses incurred should be borne by the party who is unable to make title, should not be extended so as to include within the contemplation of the word “expenses” attorney’s fees based almost entirely on the filing of the suit for the collection of those expenses.
We think that the attorney’s fees claimed here were expenses incurred in an attempt to collect those other expenses. If the fees here claimed are to be allowed, then we see *693 no reason why attorney’s fees should not be allowed in any suit <?n any claim.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.