**HOLAHAN v. NUGENT**

No. 13707.

United States Court of Appeals
Fifth Circuit.

July 18, 1952.

Rives, Circuit Judge, dissented.

654

Bernhardt, C. Heebe, New Orleans, La., for appellant.

James I. McCain, New Orleans, La., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

The sole question in this case is whether ordinary debts of creditors with no lien, pledge, or title, which are incurred during the period of occupancy of a family home in a Louisiana city of more than 100,000 population and before the filing of the declaration of homestead exemption, are enforceable against, or from the proceeds of, property subsequently claimed and perfected as a homestead by the recording of a homestead declaration. The question arises in this way. Appellee Nugent and his wife, in 1941, purchased as community property a residence located in New Orleans, Louisiana, moved into the residence, and continually resided there until the home was sold in 1950 by the trustee in bankruptcy. In 1948, Nugent contracted a number of ordinary, unsecured debts. On January 4th, 1949, he and his wife properly filed and had recorded a joint declaration of homestead as authorized by Article XI of the Constitution of Louisiana, as amended in 1932 and 1938, and likewise claimed it as a family home under the provisions of Act 35 of the Legislature of the State of Louisiana for the year 1921, LSA–R.S. 9:2801 et seq. On December 17th, 1949, Nugent filed a petition in bankruptcy in which he asserted his homestead exemption. The property was subject to a mortgage passed on November 15th, 1943, in which the husband and wife waived their homestead exemption, but only in favor of the mortgage creditor. The property was sold by the trustee, the mortgage paid, and a balance of approximately $11,000 remained. The ordinary creditors, two of whom had reduced their claims to judgment after the filing of the homestead declaration, claimed the proceeds, including the homestead exemption. The Referee held the claims of such creditors superior to the claim of homestead, but, upon review, the District Judge reversed this order and adjudged that the homestead exemption was superior to, and should be prior to the payment of, the claims of the unsecured creditors.

We think the Court properly held that the homestead exemption was superior to such claims of the creditors. Article XI

of the Constitution of Louisiana, as amended in 1932 and 1938, provides a homestead exemption. So far as material here, Section 1 declares exempt "from seizure and sale by any process whatever, except as herein provided, the homestead, *bona fide,* owned by the debtor and occupied by him" consisting of specified lands and other property to the total value of not more than $4,000.00. Section 2[1] declares that the exemption shall not apply to specified debts. Its concluding paragraph is explicit. The proviso last quoted accords with a provision in Section 1 which contemplates a possible sale to determine the value of the homestead and which declares that if the sale does not realize more than $4,000.00 over and above all costs and expenses, the sale shall be null and void. Section 3 provides for a waiver of exemption in whole or in part, either general or special, by waiver in writing, which, to be effective, must be made by both the husband and wife if living together. Such waiver shall have effect from the "time of recording." Section 4, upon the language of which the appellant bases his argument, is as follows: "The homestead exemptions herein provided shall exist without registration, except where the property is situated in a city having a population of more than one hundred thousand (100,000), in which latter event said exemptions shall not be valid unless recorded in the manner provided by Act 114 of 1880, or as may be otherwise provided by law." It will be observed that generally the homestead exemption exists without registration. In such instances it has been held "that the existence of an ordinary debt, even though it be reduced to judgment, will not, unless the judgment be recorded, operate to prevent the acquisition of a right of homestead which will protect the property, occupied and claimed as a homestead, from seizure in satisfaction of such judgment." Pouncy v. Gunby's Estate, 138 La. 10, 69 So. 856. In that case the debt arose when the debtor was unmarried and did not occupy the land and therefore was not entitled to acquire a homestead, but it was held that after marriage and occupancy such right and claim was effective as against the enforcement of the debt. The decision thus clearly recognizes that when the right to exemption arises it defeats the enforcement of prior ordinary debts. It is true that the provisions of Section 4, of Article XI, of the Constitution of Louisiana, supra, are susceptible to the construction that in a case of property situated in a city of more than 100,000 population the exemption provided does not become finally effective until recordation is made in the manner required. We do not attempt to determine whether the provision might be given the broader interpretation relied upon by appellee, as one part of his argument, for we are clear that even under the more restricted view the act of recordation is suf-

1. "This exemption shall not apply to the following debts, to wit:

"1. For the purchase price of property or any part of such purchase price.

"2. For labor, money, and material, furnished for building, repairing or improving homesteads.

"3. For liabilities incurred by any public officer, or fiduciary, or any attorney at law, for money collected or received on deposits.

"4. For taxes or assessments.

"5. For rent which bears a privilege upon said property.

"6. For the amount which may be due a homestead or building and loan association for a loan made by it on the security of the property; provided, that if at the time of making such loan the borrower be married, and not separated from bed and board from the other spouse, the latter shall have consented thereto.

"7. For the amount which may be due for money advanced on the security of a mortgage on said property; provided, that if at the time of granting such mortgage the mortgagor be married, and not separated from bed and board from the other spouse, the latter shall have consented thereto.

"No court or ministerial officer of this State shall ever have jurisdiction, or authority, to enforce any judgment, execution, or decree, against the property exempted, as a homestead, except for the debts above mentioned in numbers one, two, three, four, five, six and seven of this Section; provided the property herein declared exempt shall not exceed in value Four Thousand Dollars ($4,000.00)."

ficient to render the homestead exemption prior in right and claim to the ordinary debts here sought to be enforced against it. We do not attribute to the language of the Constitution, by its provision for registration, an intention to provide one ultimate measure of exemption for citizens in a city of more than 100,000 population and another in other localities of the State. It would seem that the requirement for registration in such cities, at most, only postpones the effective establishment of the right of exemption, which, when finally perfected and established by recordation, is as effective from that time on as would be true in a locality where the right existed without registration. The exemption from seizure and sale applies to property whether "rural or urban". It could well be that the proviso requiring registration in cities of more than 100,000 population contemplated that in cities of this size there did not exist the opportunity for knowledge and notice of occupancy of the residence as a family home which obtained in small communities and that the requirement of recordation was imposed to supply the notice which in other cases is usually and generally known in the neighborhood. However this may be, it is entirely clear that following the recordation the homestead exemption is as effective in the city as in the country. In neither location do we find any basis for a determination that an ordinary debt, even though contracted prior to the perfection of the exemption right, is superior to, and may be enforced against, the exemption provided by the Constitution. Such ordinary debts, without privilege, pledge, lien or title can not invade the security provided by the Constitutional claim of exemption. Of course, it would seem that in the city, prior to recordation, and in the country, prior to the arising of circumstances which give rise to the right to claim the exemption, claims or

encumbrances which affect the title, which the debtor must have in order to enjoy any homestead exemption at all, would prime the exemption, but debts without such rights and privileges are those against which the Constitution raises a barrier to enforcement in order to carry out the declared public policy implicit in its provisions.[2] The language of the Constitution contemplates that the homestead exemption shall have the purpose of availing the head of the family of its protection against outstanding debts for it designates the person entitled to protection as "debtor."

Counsel for appellant relies largely upon the decision in Succession of Furniss, 34 La.Ann. 1013, a decision in 1882 dealing with the provisions of the Louisiana Constitution of 1879. We do not find this authority applicable in determining the legal effect of the language of the present Constitution of Louisiana. The basis of that decision is expressly the fact that the Constitution of 1879 contained no provision for waiver of exemption. Such is not true at the present. The present Constitution expressly permits waiver and the reason that impelled the decision in the early case does not now obtain. The decision in Clarke v. Natal, 138 La. 1038, 71 So. 149, referred to in Watson v. Bethany, 209 La. 989, 26 So.2d 12, dealt with the priority of a mortgage perfected before the registry of the homestead declaration.

At the time the declaration of homestead in the present case was recorded the existence of the antecedent debts in no way affected the title of the head of the family and his wife. Upon recordation the homestead exemption provided by the Constitution became finally effective. The debts now sought to be enforced are not among those specified as excepted by the provision of Section 2 of Article XI of the Constitu-

2. Lee v. Cooper, 155 La. 143; 98 So. 869; State ex rel. Code v. Code, 215 La. 485, 41 So.2d 62; Young v. Geter, 185 La. 709, 170 So. 240, 242, 107 A.L.R. 608.

The decision in Young v. Geter, supra, recognizes the abandonment in Louisiana of the former rule of strict construction of exemption laws. Supported by the citation of two authorities, the Supreme Court of Louisiana declares: "this court has adopted the rule that whenever the claim to the exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption will be allowed."

tion of Louisiana, supra. The trial judge did not err in adjudging the bankrupt entitled to receive the homestead exemption in the amount of $4,000.00.

Judgment affirmed.

RIVES, Circuit Judge (dissenting).

A single question of law is presented for decision. It involves the construction of Article XI of the Constitution of the State of Louisiana relating to exemptions from seizure and sale by legal process. Paragraph IV of that Article reads as follows:

"4. Exemption to exist without registration.—The homestead exemptions herein provided shall exist without registration, except where the property is situated in a city having a population of more than one hundred thousand (100,000), in which latter event said exemptions shall not be valid unless recorded in the manner provided by Act 114 of 1880, or as may be otherwise provided by law."

The question relates to property situated in New Orleans, and is whether ordinary unsecured debts contracted prior to the recording provided by law are superior to the homestead exemption.

The language of Section 4 of Article XI would seem clearly to provide that property situated in a city having a population of more than 100,000 is excepted from the rule that homestead exemptions exist without registration and that in such cities homestead exemptions do not even exist without registration. The same thought is repeated in the language, "said exemptions shall not be valid unless recorded." The beginning of Article XI in Section 1 states, "There shall be exempt from seizure and sale by any person whatever *except as herein provided*, the homestead, etc." (Emphasis supplied.) Section 4 in no way conflicts with any of the other sections of Article XI of the Louisiana Constitution, and there is nothing in the other sections that would make the language of Section 4 ambiguous or uncertain.

Just what may have been the purpose of the framers of the Constitution in providing separately for homestead exemp-

tions in large cities, we are not advised. While it may be unprofitable to speculate, it is true that in most states rural and urban homesteads have received separate treatment. A homestead in the country may often be more important to the head of a family than one in the city. In rural areas the homestead often furnishes not only the place of abode but the means of earning a livelihood. Whatever the cause, it is true also that historically Louisiana has treated the homestead exemption differently in urban than in rural areas. In the case of Poole v. Cook, 1882, 34 La.Ann. 331, 332, the Louisiana Supreme Court says, "Now, the most distinguishing feature between the homestead law of 1865, and that provided for in the Constitution of 1879, is that the former law applied only to *rural* estates and not to *urban* property, and that the Constitution of 1879 extends the benefit of homestead exemptions to both *rural* and *urban* estates."

Under the Constitution of 1879, it was necessary to record all homestead exemptions, whether rural or urban, and regardless of the size of the city. The appropriate provision of that Constitution declared that, "Such exemptions, to be valid, shall be set apart and registered as shall be provided by law." The law therein required to be enacted was supplied as Act 114 of 1880 and is the same act now referred to in Section 4 of Article XI of the present Louisiana Constitution. Not only is the same statute applicable, but the language of the recording requirement of the Constitution of 1879 applicable to all homestead exemptions and of the provision now applicable to cities of over 100,000 are practically identical.

In 1882 the precise question now presented to this Court with reference to property situated in cities of over 100,000 was decided by the Supreme Court of Louisiana with reference to the requirement of the Constitution of 1879 as to the registration of homestead exemptions generally. Succession of Furniss, 34 La.Ann. 1013. I do not think that that decision can be distinguished on the ground that the Constitution of 1879 contained no provision for waiver of exemption, nor that that is

the only or even the main reason upon which that decision is based. The opinion in that case is lengthy and leaves nothing to implication. Suffice it to say that in clear and strong language it sustains the pertinent headnote:

"1. Under the homestead provisions of the Constitution of 1879, the exemptions therein provided only take effect from the date of registry, as provided by law, and are inoperative against debts contracted prior to such registry."

Again, in Kinder v. Lyons, 1886, 38 La. Ann. 713, it is true that the debts for which the judgment sought to be executed were obtained were contracted previous to the adoption of the Constitution of 1879, and the case is, therefore, distinguishable on its facts. Nevertheless, the language of the court's opinion fully supports the pertinent headnotes:

"2. Homestead provisions of the Constitution of 1879 avail only those who register claims therefor, antecedent to contracting debts sought to be enforced against it."

"3. A judgment liquidates, but does not create, a debt. It recognizes existing but confers no new or additional rights."

Whether the homestead character dates from the time of occupancy or from the filing and recording of the declaration is a question that must, of course, be determined according to the constitution and laws of the particular state. In 40 C.J.S., Homesteads, 49(a), page 483, it is said, "Where the filing and recording of a declaration is necessary, * * *, the homestead character dates from the due performance of these acts, and not from mere occupancy of the premises." In White, Trustee, v. Stump, 266 U.S. 310, 311, 45 S.Ct. 103, 69 L.Ed. 301, the United States Supreme Court had occasion to consider the provision of the laws of Idaho for homestead exemption and observed that, "The exemption arises when the declaration is filed, and not before." In Myers v. Matley, 318 U.S. 622, 63 S.Ct. 780, 87 L. Ed. 1043, the Supreme Court while approving the general doctrine of the Stump case, distinguished it on the ground that the laws of Nevada there under consideration did not condition the homestead exemption upon filing but created a persisting right in the bankrupt to declare his exemption at any time before actual sale. See also Sampsell v. Straub, 9 Cir., 189 F. 2d 379; on rehearing, 194 F.2d 228. Louisiana very clearly falls within the class of states more nearly akin to Idaho than to Nevada.

It seems to me that that was expressly decided in the case of Clarke v. Natal, 138 La. 1038, 71 So. 149. Article 247 of the Constitution of 1913 there under consideration was very similar to Article XI of the present constitution. It differed in that recording was then required only in the Parish of Orleans while it is now required in all cities of over 100,000 population. It differed also in that sub-division 7 of Section 2 of the present Article XI listing the debts not subject to exemption was added after the adoption of the Constitution of 1913. The added provision reads:

"7. For the amount which may be due for money advanced on the security of a mortgage on said property; provided, that if at the time of granting such mortgage the mortgagor be married, and not separated from bed and board from the other spouse, the latter shall have consented thereto."

In other words, under the Constitution of 1913 the owner could not make a valid mortgage on his homestead. In Clarke v. Natal, supra, the owner undertook to place a mortgage on the property on which she and her minor children resided in the City of New Orleans and she thereafter recorded her declaration of homestead. The Supreme Court of Louisiana speaking through Mr. Justice O'Niell said:

"Article 247 of the Constitution of 1913 provides that:

" 'In the parish of Orleans, the homestead (exemption) to be valid shall be recorded as is now or may be provided by law.'

"The same provision was made in the Constitution of 1898, which did

away with the requirement of registry in other parishes. Act No. 114 of 1880 declared that a person claiming the homestead exemption provided in articles 219 and 220 of the Constitution of 1879 was required to record a declaration, sworn to, describing the property, etc., in the mortgage records of the parish in which the property was situated. The provisions of the statute were therefore retained in force in the parish of Orleans, by the Constitutions of 1898 and 1913. There is no homestead exemption in the parish of Orleans, unless and until the person claiming it has had recorded the declaration required by law. The right to acquire the exemption by recording the declaration is not in itself a right of exemption from seizure of the homestead, and it cannot affect creditors of the owner of the homestead until he has availed himself of the exemption by recording the declaration. The defendant in this case had no homestead exemption when she gave the mortgage on her home, and subsequent registry of her declaration could not prejudice the rights of the mortgagee. To hold otherwise would be contrary to our laws of registry, and would be an unreasonable construction of the provisions of the Constitution and statute on the subject."

That case is quoted from and cited with approval in the late case of Watson v. Bethany, 209 La. 989, 26 So.2d 12, 16. Clearly I submit the rationale of the holding in Clarke v. Natal, supra, is that the homestead character dates from the time of the recording of the declaration and not from the occupancy of the premises.

It is said, however, that if that be conceded, yet when once the homestead character has been established, it then takes precedence over debts theretofore contracted. Here again the constitutions and laws of the several states differ. As said in 40 C.J.S., Homesteads, § 97(d), page 538, "In some jurisdictions where a declaration of homestead is essential to the acquisition of the exemption, the homestead is exempt only as against debts contracted after the recording of such declaration, but in other jurisdictions the exemption may be claimed provided the declaration is registered prior to the attachment of a lien." See also 26 Am.Jur., Homestead, Sec. 100. The law differs in various jurisdictions on the question also of whether simple contract creditors as well as lien creditors are within the protection of the recording laws. See 45 Am.Jur., Records and Recording Laws, Sec. 152. It seems to me that Succession of Furniss, supra, settled both questions in Louisiana to the effect that the homestead is exempt only as against debts contracted after the recording of the declaration, and that simple contract creditors as well as lien creditors are within the protection of the provision requiring recording.

The view that the recording provision of Section 4 of Article XI of the Louisiana Constitution protects only claims or encumbrances which affect the title would, it seems to me, practically eliminate the requirement of recording, for nearly all such claims and encumbrances with the exception of judgments are already protected under Section 2 of Article XI as debts not subject to exemption, and such a construction leaves the debtor free to record his declaration of homestead the day before bankruptcy or the day before the rendition of a judgment against him. The recording requirement, for all practical purposes, is emasculated. Louisiana thought so well of the separate treatment accorded the Parish of Orleans that in its present Constitution it joined with it other cities, now Shreveport and Baton Rouge, having populations of over 100,000. The readoption and extension of the recording requirement to be applied to persons having homesteads in such cities clearly carried with it the construction impressed upon that requirement by Succession of Furniss, supra. At this late date, by a decision which erases any real distinction between the two, are we in effect to wipe out the long Louisiana history of different treatment of urban and rural homesteads, and the

Constitutional provision approving and extending to other cities the recording requirement?

Appellee's principal reliance is upon the case of Pouncy v. Gunby's Estate, 138 La. 10, 69 So. 856, which in turn cites two old Louisiana decisions. None of the three involved the recording requirement. To say that the rights of the simple contract creditor to proceed against the homestead may be defeated by some subsequent creditor taking a mortgage upon the property, see Robert v. Coco, 25 La.Ann. 199, 200, or by the subsequent enactment of a homestead law, see same case and Doughty v. Sheriff, 27 La.Ann. 355, or by the subsequent marriage of the owner and settlement upon the land, see Pouncy v. Gunby's Estate, 138 La. 10, 69 So. 856, is not at all the same as to say that such creditor's rights may be defeated by the subsequent recording of the homestead claim. The validity of the last statement depends upon whether simple contract creditors are within the class intended to be protected by the recording requirement, and in Louisiana that question is settled by Succession of Furniss, supra. If the rationale of the holding in Pouncy v. Gunby's Estate, supra, is in conflict with that of Clarke v. Natal, supra, then the latter case is more nearly in point and is also the later decision and its reasoning should be followed by this Court.

I agree with my brothers that the Constitution provides the same ultimate measure of exemption for citizens in cities of more than 100,000 population and for those in other localities of the state. The essential difference is that in the large cities the homestead exemption does not exist until the claim is recorded, up to that time the conclusive presumption is that the owner does not intend to claim a homestead exemption, while in other localities the presumption is just the opposite until a waiver is recorded as provided by Section 3 of Article XI providing in part, that "Such waiver may be either general or special, and shall have effect from the time of recording." It is significant that the only two provisions of Article XI of the Louisiana Constitution providing for recording are those in Section 3 as to re-

cording the waiver of exemption and in Section 4 as to recording the claim of exemption, and I submit that both provisions have effect from the time of recording. Further, simple contract creditors are within the protection not only of Section 4, as I have tried to demonstrate, but also of Section 3, for, otherwise, there would be no reason for providing for the recording of a *general* waiver. In the large cities the homestead exemption does not come into existence until claimed and recorded; in the other localities the homestead exemption is in effect until a waiver is recorded.

The importance of the question now decided not only to the parties before the Court, but to citizens of New Orleans, Baton Rouge, Shreveport, and other cities which may reach a population of 100,000 in the future, and to the jurisprudence of the State of Louisiana, and the consideration that the question will not be authoritatively settled until decided by the Supreme Court of Louisiana have lead me to dissent at greater length than I would otherwise feel justified.